IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-344-D

HENRY T. LOCKLEAR,            )
                              )
                  Plaintiff,  )
                              )
        v.                    )       **ORDER**
                              )
FEDERAL HOME MORTGAGE         )
CORPORATION, and              )
WELLS FARGO BANK, N.A.,       )
                              )
                  Defendants. )

On January 30, 2017, Wells Fargo Bank, N.A. ("Wells Fargo" or "defendant") moved to dismiss this action for lack of subject-matter jurisdiction and failure to state a claim [D.E. 16]. See Fed. R. Civ. P. 12(b)(1), (6). On January 31, 2017, the court notified Henry T. Locklear ("Locklear" or "plaintiff") about the motion to dismiss and the consequences of failing to respond [D.E. 18]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Locklear did not respond, although on February 24, 2017, Locklear asked the pro bono panel to review his case [D.E. 20]. As explained below, the court grants Wells Fargo's motion to dismiss, denies Locklear's request that the pro bono panel review his case, and dismisses Locklear's action for lack of subject-matter jurisdiction.

I.

On or about September 26, 2005, Locklear and his wife ("Ms. Locklear") obtained a $115,000 loan from Sidus Financial, LLC ("Sidus"). Compl. [D.E. 7] ¶¶ 5–6. Locklear and Ms. Locklear memorialized their loan obligations in a Promissory Note (the "Note") and secured their obligations with a Deed of Trust encumbering their residence at 1823 Snake Road, Lumberton, North

Carolina (the "Collateral Property"). Id. ¶¶ 6–7; [D.E. 16-1] (Note); [D.E. 16-2] (Deed of Trust). On September 28, 2005, the Deed of Trust was recorded in Book D 1491 at Page 889 of the Robeson County, North Carolina Public Registry.

Plaintiff and Ms. Locklear defaulted on their loan payments. On June 14, 2007, the Clerk of Robeson County Superior Court ("Clerk") entered an Order to Allow Foreclosure Sale (the "Foreclosure Order"). [D.E. 16-3]. Plaintiff and Ms. Locklear appealed the Foreclosure Order, but, on October 4, 2007, the Robeson County Superior Court dismissed their appeal in an Order to Dismiss Appeal. [D.E. 16-4]. Plaintiff and Ms. Locklear sought reconsideration in Robeson County Superior Court, but they withdrew their motion for reconsideration on January 17, 2008. [D.E. 16-5].

Between March 17, 2008, and October 16, 2013, Locklear and Ms. Locklear filed numerous voluntary bankruptcy petitions in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court"). Each time Locklear or Ms. Locklear filed a voluntary bankruptcy petition, the Substitute Trustee had to advertise notice of the foreclosure sale, delaying the actual foreclosure of the property. See N.C. Gen. Stat. § 45-21.22(c).

On January 9, 2013, Locklear filed a voluntary petition under Chapter 13 in the Bankruptcy Court, and the case was assigned case number 13-00155-9-SWH (the "January Bankruptcy Case"). [D.E. 16-6]. On February 26, 2013, the Bankruptcy Court dismissed the January Bankruptcy Case. [D.E. 16-7]. On May 24, 2013, Locklear filed another voluntary petition under Chapter 13 in the Bankruptcy Court, and the case was assigned case number 13-03385-5-RDD (the "May Bankruptcy Case"). [D.E. 16-8]. On May 24, 2013, the Bankruptcy Court dismissed the May Bankruptcy Case. [D.E. 16-9]. On August 5, 2013, the Clerk re-activated the 2007 foreclosure proceeding in an Order Rendering File Active. [D.E. 16-10]. On October 16, 2013, pursuant to the Foreclosure Order,

2

Wells Fargo purchased the Collateral Property at a foreclosure sale. On October 16, 2013, Locklear filed another bankruptcy petition and the case was assigned case number 13-06493-8-DMW (the "October Bankruptcy Case"). [D.E. 16-11]. On December 3, 2013, the Bankruptcy Court dismissed the October Bankruptcy Case. [D.E. 16-12]. On April 25, 2014, the Bankruptcy Court entered an Order Confirming the Automatic Stay is Not in Effect in which the Bankruptcy Court held that because Locklear filed two prior bankruptcy cases in 2013 that were dismissed for failure to pay the filing fee, Locklear's filing of the October Bankruptcy Case had not triggered the automatic stay. See [D.E. 16-13]; 11 U.S.C. § 362(c)(4)(A)(i).

Wells Fargo assigned its bid to Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Substitute Trustee conveyed title to the Collateral Property to Freddie Mac in the Substitute Trustee's Deed. See [D.E. 16-15, 16-16]. On November 25, 2013, the Substitute Trustee's Deed was recorded in Book D 1930, Page 163 of the Robeson County, North Carolina Registry of Deeds.

On February 28, 2014, Locklear filed a complaint against Wells Fargo and Freddie Mac (the "State Court Complaint") in Robeson County Superior Court, Case 14 CVS 00451 (the "State Court Action"). [D.E. 16-17]. The complaint in the State Court Action essentially replicates the instant complaint. Compare id. with Compl. On May 2, 2014, the Robeson County Superior Court entered an order denying Locklear's request for a preliminary injunction to enjoin the enforcement of a Writ of Possession of the Collateral Property (the "Order"). [D.E. 16-18]. On May 19, 2014, Locklear voluntarily dismissed the State Court Action. See [D.E. 16-19].

II.

In Locklear's complaint, Locklear makes five claims for relief against Wells Fargo – breach of contract, abuse of process, libel, slander, and request for a restraining order. See [D.E. 7] Compl. ¶¶ 42–62. All five claims concern the foreclosure. See id.

3

A.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). As the party asserting that this court has subject-matter jurisdiction, Locklear must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647.

The Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994); see D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Thana v. Bd. of License Comm'rs for Charles Cty., 827 F.3d 314, 318–20 (4th Cir. 2016); Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005). The Rooker-Feldman doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted). Rooker-Feldman "reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." Id. (quotation omitted). "The doctrine [also] preserves

4

federalism by ensuring respect for the finality of state court judgments." Washington, 407 F.3d at 279.

Rooker-Feldman is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006); Thana, 827 F.3d at 318–20. It applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284 (2005); see Skinner v. Switzer, 562 U.S. 521, 531–33 (2011); Thana, 827 F.3d at 318–20. For the doctrine to apply, the party seeking relief in federal court must be asking the federal court to "reverse or modify the state court decree." Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quotation omitted); Thana, 827 F.3d at 318–20. Accordingly, the court "examine[s] whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani v. Va. Dep't of Transp, 434 F.3d 712, 718 (4th Cir. 2006) (footnote omitted); see Thana, 827 F.3d at 318–20.

Locklear's complaint asks this court to review and reverse the Foreclosure Order. See Compl. ¶¶ 42–62 & prayer for relief. The Rooker-Feldman doctrine provides that the federal courts lack subject-matter jurisdiction to act as the functional equivalent of state appellate courts. Thana, 827 F.3d at 318–20; Shooting Point L.L.C. v. Cumming, 368 F.3d 379, 383 (4th Cir. 2004). Therefore, the Rooker-Feldman doctrine bars this court from considering Locklear's complaint, and the court dismisses the complaint for lack of subject-matter jurisdiction.

B.

Alternatively, even if the Rooker-Feldman doctrine did not apply, Locklear has failed to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) for "failure to

state a claim upon which relief can be granted" tests the complaint's legal and factual sufficiency. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Id. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quotation omitted).

The standard used to evaluate a pleading's sufficiency is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd., 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Locklear's complaint fails to meet the Twombly/Iqbal standard. First, Locklear argues that Wells Fargo breached its obligations under the Note by refusing to accept partial payments. See Compl. ¶¶ 16–17. Locklear, however, does not allege that Wells Fargo was under any obligation to accept partial payments from Locklear. The Note does not require Wells Fargo to accept partial payments, explicitly states that Locklear's monthly payments were to be $939.65, and makes no

6

provision under which Locklear may make his monthly payments in partial payments. [D.E. 16-1] 2.[1] Locklear also contends that his October Bankruptcy Case should have prevented the foreclosure sale of the Collateral Property. Id. ¶ 27. As the bankruptcy court explained in its Order Confirming the Automatic Stay is not in Effect, however, the October Bankruptcy Case did not result in an automatic stay of the foreclosure proceeding. See [D.E. 16-13]. Finally, to the extent Locklear argues that he should be granted a restraining order, Locklear bases that argument on the immediate and irreparable injury that being forced to vacate his home would cause Locklear. See Compl. ¶¶ 29–34, 60–62. This portion of Locklear's complaint reiterates the request for a restraining order in Locklear's State Court Action, and Locklear cannot plausibly allege that he faces immediate and irreparable injury today on the basis of actions which transpired in 2014. Thus, Locklear's complaint fails to state a claim upon which relief can be granted.

To the extent that Locklear attempts to recover the Collateral Property, the complaint is moot. "[W]hen the trustee's deed has been recorded after a foreclosure sale, and the sale was not stayed, the parties['] rights to the real property become fixed, and any attempt to disturb the sale is moot." In re Cornblum, 220 N.C. App. 100, 106, 727 S.E.2d 338, 342 (2012). Because the sale of the real property at issue in this case was not stayed, the parties' rights to the real property at issue in the complaint became fixed when the Substitute Trustee's Deed was filed. Thus, Locklear's attempt to have the Substitute Trustee's Deed set aside is moot. See id. at 106-07, 727 S.E.2d at 342-43; In re Hackley, 212 N.C. App. 596, 605–06, 713 S.E.2d 119, 125 (2011).

Alternatively, res judicata bars Locklear's claims. In North Carolina, the res judicata doctrine provides that "any right, fact, or question in issue and directly adjudicated on or necessarily

---

[1] The Note does, by contrast, explicitly provide for partial payments of prepayment funds, but not of normal monthly payment funds. Id.

7

involved in the determination of an action before a competent court . . . on the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies." Gaither Corp. v. Skinner, 241 N.C. 532, 535, 85 S.E.2d 909, 911 (1955). The res judicata doctrine bars re-litigation of "every point which properly belonged to the subject litigation and which the parties, exercising reasonable diligence, might have brought forward." Painter v. Wake Cty. Bd. of Educ., 288 N.C. 165, 217 S.E.2d 650, 655 (N.C. 1975) (quotation omitted). It also bars the assertion of defenses, as well as claims or counterclaims, that were or could have been litigated in the earlier proceeding. See Goins v. Cone Mills Corp., 90 N.C. App. 90, 93, 367 S.E.2d 335, 336–37 (1988).

Chapter 45, Article 2A of the North Carolina General Statutes provides the procedure for foreclosure of a deed of trust under a power of sale in North Carolina. See N.C. Gen. Stat. §§ 45-21.1, et seq. In 2007, to obtain a foreclosure pursuant to a power of sale required a hearing before the Clerk of Superior Court to determine, among other things: (1) the existence of a valid debt, (2) the debtor's default, (3) the trustee's right to foreclose, and (4) sufficient notice to record owners. N.C. Gen. Stat. § 45-21.16; see In re Helms, 55 N.C. App. 68, 71, 284 S.E. 2d 553, 555 (1981). A party may appeal a decision of the Clerk of Court to the Superior Court, which reviews the Clerk's decision de novo. See N.C. Gen. Stat. § 45-21.16. § 45-21.16(d1); Phil Mechanic Construction Co., Inc. v. Haywood, 72 N.C. App. 318, 322, 325 S.E.2d 1, 3 (1985). The Superior Court may consider evidence of legal defenses tending to negate any of the findings required under N.C. Gen. Stat. § 45-21.16. See In re Foreclosure of Deed of Trust, 334 N.C. 369, 371, 432 S.E.2d 855, 859 (1993).

A party may raise equitable defenses in a separate action to enjoin the foreclosure sale under N.C. Gen. Stat. § 45-21.34. See id., 432 S.E.2d at 859. Section 45-21.34 provides that "[a]ny owner of real estate ... may apply to a judge of the superior court, prior to the time that the rights of the parties to the sale or resale becoming fixed . . . to enjoin such sale . . . upon any . . . legal or equitable

8

ground which the court may deem sufficient." N.C. Gen. Stat. § 45-21.34. The rights of the parties "become fixed" at the expiration of a ten-day period for filing upset bids. Id. § 45-21.29A; In re Smith, 24 B.R. 19, 23 (Bankr. W.D.N.C. 1982).

"[I]ssues decided [in a proceeding under sections 45-21.1, et seq.] as to the validity of the debt and the trustee's right to foreclose are res judicata and cannot be relitigated." Phil Mechanic Construction Co., 72 N.C. App. at 322, 325 S.E.2d at 3; see Carmichael v. Irwin Mortgage Corp., 2014 WL 7205099, at *3–4 (E.D.N.C. Dec. 17, 2014) (unpublished). In the Foreclosure Order, the Clerk determined that the Note represented a valid debt, that Locklear had defaulted on his payment obligations, that there was a right to foreclose, and that there was no reason the foreclosure should not commence. See [D.E. 16-3]. Because Locklear failed to raise the alleged breaches of the Note and Deed of Trust or any of his other arguments during the foreclosure proceedings, the rights of the parties became fixed at the expiration of the upset bid period, and Locklear is barred from raising them in this action. See, e.g., Carmichael, 2014 WL 7205099, at *2–4. Thus, res judicata bars Locklear's claims.

III.

In sum, the court GRANTS Wells Fargo's motion to dismiss [D.E. 16] and DISMISSES the action for lack of subject-matter jurisdiction. Alternatively, Locklear has failed to state a claim upon which relief can be granted. Locklear's motion to have the pro bono panel review the case for consideration [D.E. 20] is DENIED as moot.

SO ORDERED. This __1__ day of May 2017.

JAMES C. DEVER III
Chief United States District Judge

9